2001 ME 74

**ESTATE OF Minnie LEWIS**

Supreme Judicial Court of Maine.

Argued: April 10, 2001.

Decided: May 4, 2001.

---

Thomas F. Hallett, Esq., (orally), Portland, for appellant.

Jerrol A. Crouter, Esq., John S. Kaminski, Esq., Drummond Woodsum & MacMahon, Jonathan S. Piper, Esq., Alfred C. Frawley, Esq., Preti, Flaherty, Beliveau, Pachios & Haley, LLC, Portland, for appellees.

Panel: WATHEN, C.J., and RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

WATHEN, C.J.

[¶ 1] Lawrence Lewis appeals from the judgment of the Cumberland County Probate Court (*Childs, J.*) denying his claim of undue influence in connection with the will of his mother, Minnie Lewis. He argues that the Probate Court erred in failing to apply a presumption of undue influence; in applying a clear and convincing standard of proof; and in failing to strike an "anti-harassment" clause from the will as against public policy. The personal representatives filed a cross-appeal contending that the Probate Court erred in making a determination concerning the future enforceability of the "anti-harassment" clause on the basis that the issue was not ripe and in awarding attorney fees to Lawrence Lewis based on the potential viability of that claim. Finding no error, we affirm the judgment.

[¶ 2] The relevant facts may be summarized as follows: Minnie Lewis, the testatrix, died on April 5, 1999, leaving a will dated September 6, 1991, and a codicil. She was survived by three sons, David, Paul, and the contestant Lawrence. She was also survived by three grandchildren, the children of her predeceased son, Bernard, who died before Minnie executed her last will. She was also predeceased by her husband, George. Minnie retained Attorney Edwin Heisler to prepare the will and codicil. Attorney Heisler continued to represent son David in estate planning matters and had prepared a will and trust for son Lawrence in 1972.

[¶ 3] After Minnie Lewis's death, an application for informal appointment of personal representatives was filed and Attorney Heisler and sons David and Paul were appointed personal representatives. Thereafter, a petition for formal probate of will and appointment of personal representatives was filed. Lawrence objected and, after hearing, the Probate Court entered a judgment in which it declined to find any undue influence resulting from Attorney Heisler's dual representation of testatrix and her son David or resulting from any conduct of Lawrence's siblings, either individually, with each other, or with Attorney Heisler. In addition, the court declined to determine that the "anti-harassment" clause in Minnie's will was, as a matter of law, against public policy and thus unenforceable. Instead, the court found that the clause had not been invoked or used against Lawrence. The court left open the question as to future enforceability under section 3–905 of the Probate Code and awarded Lawrence attorney fees on this basis. Lawrence Lewis filed an appeal and the personal representatives filed a cross-appeal.

I. Presumption of Undue Influence

[¶ 4] Lawrence argues that (1) the Probate Court erred in failing to apply a presumption of undue influence with respect to will contests in general; and (2) even if it did not err in failing to apply the presumption broadly, it erred as a matter of law in failing to apply a presumption of undue influence when a confidential relationship exists between an attorney and a testatrix and the attorney breaches the duty of loyalty to the testatrix by dual representation of the testatrix and a beneficiary. By this line of argument, Lawrence seeks to shift the burden to the personal representatives to prove that undue influence did not occur. *See* M.R. Evid. 301(a) ("a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence.")

[¶ 5] Contrary to Lawrence's assertion, the law in Maine is clear. Although we have applied a presumption of undue influence when the existence of a confiden-

tial relationship between two parties has been established in cases involving an inter vivos transfer of property, *see Estate of Sylvester v. Benjamin,* 2001 ME 48, ¶ 6, 767 A.2d 297, the presumption does not apply in will contests. *See* 18–A M.R.S.A. § 3–407 (1998); *Estate of Langley,* 586 A.2d 1270, 1272 (Me.1991); *In re Will of Fenwick,* 348 A.2d 12, 15 (Me.1975).

[¶ 6] In Maine, after the proponent of the will has shown by a preponderance of the evidence that the will was duly executed, it is the contestant who bears the burden to prove that the probate should not be ordered because of a "lack of testamentary intent or capacity, undue influence, fraud, duress, mistake or revocation." 18–A M.R.S.A. § 3–407 (1998); *Estate of Langley,* 586 A.2d at 1271. An inference of undue influence may arise in the mind of the factfinder when a confidential relationship exists between the testatrix and the one who is asserted to have influenced her and she has disposed of her property in an unexpected or unnatural manner. *Estate of Langley,* 586 A.2d at 1271; *In re Will of Fenwick,* 348 A.2d at 15. "Although proof of such circumstances permits the Probate Court to draw an inference, it does not raise a presumption of undue influence and more is required to establish that undue influence has occurred." *Id.* at 1272; *see also In re Will of Fenwick,* 348 A.2d at 15 (stating "Maine has taken the position … that proof of such circumstances does not raise a presumption of undue influence"). Unlike a presumption, an inference does not shift the burden. *Estate of Langley,* 586 A.2d at 1272. Lawrence's reliance on *Hinds v. John Hancock Ins. Co.,* 155 Me. 349, 155 A.2d 721 (1959) is misguided. The rules addressed in *Hinds* concerning inferences and presumptions were not followed, *see* Comment, *What is the Law of Rebuttable Presumptions in Maine?,* 16 Me. L.Rev.

226 (1964), and were superseded by subsequent rules promulgated by this Court. *See* M.R. Evid. 301(a). Further, the current rule applicable in will contest cases refers to "one who is asserted to have influenced the testatrix" and does not distinguish between an attorney holding a confidential relationship and a beneficiary holding a confidential relationship. Thus, the Probate Court did not err in refusing to apply a presumption in this case arising out of the dual representation by Attorney Heisler of Minnie, her son David, and her son Lawrence. Nor did it err in refusing to apply a presumption arising out of the alleged conduct of the "heirs" in driving a wedge between Lawrence and the family.

## II. Standard of Proof

[¶ 7] Defendant also argues that the Probate Court erred in applying a clear and convincing standard of proof in determining undue influence and that the proper standard is preponderance of the evidence. We have specifically stated in will contest cases, however, that "[u]ndue influence must be established by clear and convincing evidence." *Estate of Langley,* 586 A.2d 1270, 1271 (Me.1991) (citing *Estate of Dodge,* 576 A.2d 755, 757 (Me. 1990)). Defendant's reliance on *Avery v. Whatley,* 670 A.2d 922 (Me.1996) on the basis that it is a more recent case is misplaced. *Avery* involved a claim of undue influence in procuring a deed, not a will contest. Thus, the Probate Court applied the proper standard of proof.

## III. Anti-harassment Clause

[¶ 8] Lawrence argues that the Probate Court should have struck the following anti-harassment clause from the will as against public policy and thus unenforceable as a matter of law:

Provided however, that the Trustees may, in their sole and absolute discre-

tion, suspend making any and all payments to or for the benefit of LAWRENCE LEWIS at any time when in the judgment of the Trustees, LAWRENCE LEWIS is harassing any beneficiary or any Trustee, or their agents, of any trust created hereunder.

He argues that this provision is against public policy because it subjects him to an arbitrary and capricious withholding of life-sustaining funds; allows any of his brothers as beneficiaries to concoct a story that will suspend his trust payments; and gives the trustees the unfettered right to determine harassment.

[¶ 9] The Probate Court found that it could not say that, on its face, the anti-harassment clause is unenforceable as a matter of law based on Lawrence's analysis. As the personal representatives and beneficiaries argue, will conditions that restrain conduct have long been upheld as not against public policy. *See, e.g., In re Laning's Estate*, 462 Pa. 157, 339 A.2d 520, 524–25 (1975) (upholding condition in will relating to membership in a church); *Griffin v. Sturges*, 131 Conn. 471, 40 A.2d 758, 762 (1944) (upholding condition in will relating to abstaining from the use of intoxicating liquor). The Restatement applicable to testamentary transfers provides that "[a]n otherwise effective provision in a donative transfer which is designed to prevent the acquisition or retention of an interest in property on account of the transferee acquiring or persisting in specified personal habits is valid." Restatement (Second) of Prop.: Donative Transfers § 8.2 (1981); *id.* Div. I, Pt. III Introductory Note. "The use of restraints as an inducement to the elimination of existing personal habits ... or as a means of assuring the continuance of the present character of the donee ... is not against public policy." *Id.* § 8.2 cmt. a. Moreover, the law anticipates that a

trustee may be the one to determine whether a particular restraint has been violated and provides an avenue for judicial review to avoid unreasonable exercises of power. *See* § 8.2 cmt. b (stating "where an arbiter is designated by the testator to pass upon the question whether or not the devisee has violated the terms of the restraint[,] [t]he determination of breach of performance by such an arbiter is conclusive in the absence of a judicial finding that the determination was influenced by some consideration other than an honest endeavor to evaluate the conduct of the devisee"). Thus, the Probate Court did not err in determining that the language was not unenforceable on its face.

[¶ 10] The personal representatives further argued at trial and on appeal that the Probate Code specifically spells out Maine's public policy concerning restraints of conduct and that the only restraint of conduct that is unenforceable under the Probate Code is the restraint against contesting a will:

> A provision in a will purporting to penalize any interested person for contesting the will or instituting other proceedings relating to the estate is unenforceable if probable cause exists for instituting proceedings.

18–A M.R.S.A. § 3–905 (1998). They argue that the anti-harassment clause does not fall within this *in terrorem* provision because it in no way penalizes Lawrence for contesting a will. Section 3–905, however, also applies to restraints against "instituting other proceedings relating to the estate." The Probate Court determined that, contrary to the personal representatives' contention, the application of the anti-harassment clause could fall within the purview of the *in terrorem* clause. The court found that the anti-harassment

clause "could conceivably be employed by the Trustees in the future to dissuade or prevent Lawrence from 'instituting proceedings relating to the estate' were he to question the discretionary authority of the Trustees in the administration of his Trust." It found that to the extent it might fall within the *in terrorem* clause, "the challenged clause could be found unenforceable at a later time depending upon circumstances which then present themselves to show that the anti-harassment clause is being improperly invoked or otherwise used to chill a legitimate legal action by Lawrence with regard to the Trust created by the Will." The Probate Court determined, nonetheless, that it did not need to determine the enforceability of the will clause with reference to the *in terrorem* provision at the present time because factually the clause had not been invoked or used against Lawrence.

[¶ 11] The personal representatives argue on cross-appeal that the Probate Court, by speculating on future enforceability, exceeded its authority in opining on an unripe issue. The personal representatives, however, raised the issue at trial whether the anti-harassment clause fit within the *in terrorem* provision. The Probate Court simply responded to the personal representatives' position and demonstrated that the interpretation of this clause cannot be answered strictly as a matter of law, but is dependent on factual circumstances. In some situations harassing individuals could be analogous to using intoxicating liquors and upheld as an enforceable provision against restraint of personal behavior. RESTATEMENT (SECOND) OF PROP.: DONATIVE TRANSFERS § 8.2 (1981). In other situations, however, conduct that may be characterized as "instituting proceedings relating to the estate" may be deemed by the Trustees as harassing them. In this situation, it may fall within the *in terrorem* provision of section 3–905

and be unenforceable. RESTATEMENT (SECOND) OF PROP.: DONATIVE TRANSFERS § 9.2 cmt. a, b (1981) (stating there is a public interest in holding fiduciaries to a proper standard of performance and in not deterring beneficiaries from bringing to light the questionable conduct). Thus, the Probate Court properly considered the anti-harassment clause's application to the *in terrorem* provision and did not err in its analysis.

## IV. Attorney Fees

[¶ 12] The personal representatives argue that the Probate Court erred in awarding attorney fees to Lawrence. The Probate Court, applying the analysis of *Estate of Wright*, 637 A.2d 106 (Me. 1994), determined that the "challenge to the anti-harassment provision of the Trust created by the Will was not without some merit as the clause may be subject to further scrutiny depending upon the circumstances which may arise in the future" and awarded attorney fees for this challenge. In general, we review a Probate Court's decision on attorney fees for abuse of discretion. *Estate of Wright*, 637 A.2d 106, 109 (Me.1994). If the issue is whether the Probate Court exceeded the authorization of 18–A M.R.S.A. § 1–601 (1998), we review for error of law. *Id.* We have upheld an award of attorney fees to a party whose challenge has been unsuccessful where the claims were made in good faith and the Probate Court's decision on the merits adverse to the contestants was a "close call." *Id.* at 110.

[¶ 13] The personal representatives argue that because the Probate Court's determination that the clause may have some merit in the future addressed an unripe issue, the Probate Court was wrong to award attorney fees on that ground. Because we find that the Probate Court did not err in addressing whether the clause

was enforceable within the purview of section 3–905, we do not find that the Probate Court's award of attorney fees was an abuse of discretion.

The entry is:

Judgment affirmed.