STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-04-056
REC-CUM- 11/8/2004

NOAH M. RICCI,

Plaintiff

v.

ORDER ON DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT, MOTION
TO STRIKE THE AFFIDAVIT OF NOAH
RICCI, AND MOTION FOR LEAVE TO
FILE CORRECTED REPLY

SHARON TERRY, Individually
and as Trustee of the Joseph
Ricci Trust of 2000,

Defendant.

DONALD L.
LAW

NOV 18 2004

## FACTUAL BACKGROUND

This case represents a multi-count challenge to Joseph Ricci's (hereinafter "Decedent") modification of a Declaration of Trust two days before his death.

On March 28, 2000, Decedent executed a will with a pour-over provision into the Joseph Ricci Trust of 2000 ("the Trust"). The Trust was established under a Declaration of Trust and designated Plaintiff, Noah Ricci, and his brother, Jason Ricci, equal beneficiaries of nearly all the corpus of the Trust (with each receiving a 44% beneficial interest) which included bank accounts, real estate, life insurance and stock in closely held businesses. Decedent's wife of ten months, Defendant Sharon Terry, was to receive the remaining 12% interest by way of a separate marital trust.

In early January of 2001, Decedent attended a meeting with Attorney Edward MacColl, Attorney John Campbell, Plaintiff Noah Ricci, Defendant Sharon Terry, two accountants and others. During that meeting, the participants discussed the Trust and its possible tax consequences. Possible changes to the Trust were discussed and the

parties disagree whether Decedent made any definitive decision on that day to change the Trust or to leave it unchanged.

On January 24, 2001, the Decedent was admitted to Maine Medical Center, having had a history of lung cancer and complaining of fatigue, extreme breathlessness and flank pain. While in the hospital, regular doses of morphine were administered to the Decedent through an intravenous pump. He was also given the drug Ativan which reduces fearfulness and causes sleepiness. On January 27, 2001 the Decedent was very short of breath and was suffering from air hunger. One of the doctors attending the Decedent interrogated him about his Do Not Resuscitate (DNR) status and the Decedent was unable to answer questions regarding his code or (DNR) status.[1] During that time, the Decedent's neurological status was noted as confused and agitated. The parties dispute whether the decedent was having occasional hallucinations of a black cat running across the hospital room.

On January 27, 2001, in the presence of the plaintiff, the defendant and Attorney John Campbell, the decedent was presented with and signed a document. That document appears to have been the "Amended Declaration of Trust," though there is a dispute as to whether the plaintiff knew the precise nature of the document when it was signed. That document, the validity of which is in issue, purports to establish a marital trust in favor of the defendant comprised of nearly all of Decedent's assets at the time of his death, except only so much of his property (exclusive of stock in corporations) as may pass to his children without generating any estate taxes. There is a dispute as to

---

[1] 18-A M.R.S.A. 5802 provides that a person must have "capacity" to make an advance health care directive. Section 5801(C) defines "capacity " as: "the ability to have a basic understanding of the diagnosed condition and to understand the significant benefits, risks and alternatives to the proposed health care and the consequences of foregoing the proposed treatment, the ability to make and communicate a health care decision and the ability to understand the consequences of designating an agent or surrogate to make health-care decisions."

whether the Decedent later stated that he did now know what he had signed. Decedent died on January 29, 2001.

Plaintiff has filed the instant action seeking both legal and equitable relief. Count I seeks a declaration that the Decedent lacked sufficient mental capacity to amend the Trust; Count II alleges that defendant exerted undue influence over the decedent and seeks a declaration that, as a result, the amendment is a nullity; Count III alleges that the undue influence exerted by the defendant constitutes tortious interference with plaintiff's 44% expectancy contained in the original Trust; and Count IV alleges breach of fiduciary duty by defendant in her alleged refusal to distribute any proceeds to plaintiff for a period of three and one-half years following the death of decedent. Plaintiff is seeking equitable relief in the form of voiding the amended declaration and reinstating the original Trust or, alternatively, damages for the value of the plaintiff's expectancy.

The defendant has filed a motion for summary judgment as to all counts. Additionally, the defendant filed a motion to strike the affidavit of the plaintiff, Noah Ricci, claiming that it is self-serving and contains statements that conflict with his prior deposition testimony and responses to interrogatories. Finally, the defendant has filed a motion "for leave to file a corrected reply to plaintiff's so-called 'additional facts' in opposition" to the motion for summary judgment.

## DISCUSSION

### Motion for Leave to File a Corrected Reply

Although this motion was filed only one day prior to the scheduled hearing on the motion for summary judgment and the plaintiff has therefore not had an opportunity to respond, the proposed corrections relate to remedying typographical errors in the original reply and do not make any substantial substantive changes. After

3

reviewing the original, timely filed, reply as well as the proposed corrected reply, the court GRANTS the defendant's motion.

Motion to Strike the Affidavit of Noah Ricci

In the context of summary judgment motion practice in Maine, the Law Court has made clear that a party cannot create a genuine issue of material fact in order to resist summary judgment by submitting an affidavit that clearly contradicts prior sworn testimony without also providing an adequate explanation for the discrepancy. *See Zip Lube v. Coastal Sav. Bank*, 1998 ME 81, ¶ 10, 709 A.2d 733, 735; and *Diveto v. Kjellgren*, 2004 ME 133, n.11, ____ A.2d ____. The defendant argues that because the Affidavit of Noah Ricci was submitted in response to the defendant's motion for summary judgment and after the close of discovery and because the affidavit contains statements that conflict with Noah Ricci's prior sworn testimony, the plaintiff cannot rely on it to resist summary judgment and the court should strike the affidavit in whole.

Although the court recognizes this general principle, the circumstances surrounding the submission of the affidavit as well as the alleged contradictions contained in it do not warrant striking the affidavit. First, based on the sequence of events, it is evident that contrary to the defendant's contention, the plaintiff did not wait to submit the affidavit until the close of discovery in an effort to foreclose the defendant's opportunity to respond. The record reveals that, while it is true that the affidavit was submitted after the close of discovery, it also is true that the affidavit was timely provided in response to the defendant's motion for summary judgment. That motion itself was not filed until discovery had closed.

If the defendant expects to be given an opportunity to conduct further discovery based on an affidavit submitted in response to a motion for summary judgment, she should have moved for summary judgment prior to the close of discovery. The plaintiff cannot reasonably be penalized for submitting materials in opposition to

summary judgment solely because those materials were filed after the close of discovery when the defendant dictated the timing and sequence of events through her own conduct.

Further, although the defendant argues that the affidavit directly conflicts with Noah Ricci's prior sworn testimony, an examination of the record citations provided in support of her arguments do not reveal the sort of direct and material contradiction at issue in the Law Court decisions dealing with this issue. *See e.g. Diveto*, 2004 ME 133, n.11, ____ A.2d ____. The majority of the statements contained in Mr. Ricci's affidavit and deposition to which the defendant refers represent, at most, some equivocation by Mr. Ricci regarding the precise sequence of events. These equivocations over, for example, who was in the decedent's hospital room at a given time, or what the primary focus of the January 5, 2001 meeting was, do not represent directly contradictory statements about issues material to the resolution of the claims in this case. In addition, although the defendant is correct that there is some discrepancy in Mr. Ricci's affidavit and deposition as to whether he knew precisely what it was the decedent was signing in his hospital bed, this discrepancy is not so material to warrant striking the affidavit.

The parties do not dispute that the decedent signed the Amended Declaration of Trust while in the hospital, two days prior to his death. Whether the plaintiff was able to identify the document at the time it was signed or only learned of its precise nature later is of little consequence given that the defendant's own Statement of Material Facts state that the decedent "signed the amended declaration at the Maine Medical Center on Saturday, January 27, 2001," two days before his death.

The Defendant's Motion to Strike the Affidavit of Noah Ricci is therefore DENIED.

Defendant's Motion for Summary Judgment

*Standard of Review*

Summary judgment is proper where there is no genuine issue of material fact. *Rogers v. Jackson,* 2002 ME 140, ¶ 5, 804 A.2d 379, 380. In considering a motion for summary judgment, the court must "consider the evidence and reasonable inferences that may be drawn from the evidence in the light most favorable to the party against whom the summary judgment [is sought] in order to determine if the parties' statements of material facts and referenced record evidence reveal a genuine issue of material fact." *Lever v. Acadia Hosp. Corp.,* 2004 ME 35, ¶ 2, 845 A.2d 1178, 1179. A genuine issue of material fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial. *Id.* (citing *Burdzel v. Sobus,* 2000 ME 84, ¶ 6, 750 A.2d 573, 575).

### Count I: Lack of Capacity

With respect to Count I, which seeks a declaration that the decedent lacked the requisite mental capacity to amend the Trust, defendant argues that the plaintiff has not established a genuine issue of material fact as to whether the decedent had the degree of mental capacity necessary to execute a valid amendment. Although it would appear that the Law Court has not yet addressed the question of what degree of mental capacity is necessary to change the terms of a previously authored inter vivos declaration of trust, the defendant argues that the applicable standard in this case is the same as that applied in will contests. Plaintiff, on the other hand, not only argues that he has established a genuine issue of material fact as to this issue but also argues that the degree of mental capacity necessary to validly amend a revocable trust is higher than the "testamentary capacity" standard applied to the execution or amendment of wills.

In the context of a will contest, courts apply the "testamentary capacity" standard. Under that standard:

> A testator possesses sufficient testamentary capacity if he has, at the time when he executes his will, a sound mind: that is, if he has a knowledge, in a general way, without prompting, of his estate, and an understanding of the disposition he wished to make of it by his will, and of the persons and objects he desired to participate in his bounty.

Estate of Mitchell, 443 A.2d 961, 963 (Me. 1982) (quoting *In re Will of Loomis*, 174 A. 38, 41 (1934)).

"Testamentary capacity has a low threshold which is easily crossed by a person making a will." *Estate of Siebert*, 1999 ME 156, ¶ 5, 739 A.2d 365, 366. The Law Court has recognized that that standard "give[s] the testator/testatrix a chance to do pretty much what he/she wants to do by way of testamentary devise, provided such person knows that it is a will that is being executed, knows the general nature and extent of the estate, and knows who the natural objects of bounty are." *Id*. The defendant argues that this is the standard under which the amendment should be reviewed.

The plaintiff, however, argues that a more exacting "contractual" standard is applicable to amendments of inter vivos revocable trusts. According to the plaintiff, an inter vivos revocable trust, due to its complexity and the fact that it is operative prior to the settlor's death, is more akin to a contract or an annuity policy than a will and therefore requires a higher degree of mental capacity. Under the standard proposed by the plaintiff:

> A person incurs only voidable contractual duties by entering into a transaction if by reason of mental illness or defect: (a) he is unable to understand in a reasonable manner the nature and consequences of the transaction; or (b) he is unable to act in a reasonable manner in relation to the transaction and the other party has reason to know of his condition.

Restatement (Second) of Contracts § 15 (1981).

In support of the applicability of this "contractual" standard, plaintiff cites to a recent Law Court decision in which that court held that, in order to change the designation of beneficiaries on an annuity policy, one must possess a higher degree of

7

mental capacity than when executing a will. *See In re: Estate of Marquis*, 2003 ME 1971, 822 A.2d 1153.

Although it has not yet been adopted in Maine, the court looks to section 11 of the Restatement (Third) of Trusts (2003) cmt. b for guidance on this issue. That section states:

> [because] the revocable trust serves as a will substitute with respect to all or part of the settlor's estate and has as its primary significance the determination of the persons who will receive the trust property, and in what interests, at the settlor's death ... the standards applicable to wills are also applicable in determining whether a revocable trust is valid or fails when later challenged by persons who would otherwise be the settlor's successors in interest.

*Id.*

The similarity in effect of wills and inter vivos revocable trusts of the kind involved here supports the standard articulated in the Restatement. Both are testamentary in nature and concerned with the distribution of the decedent's property after his death. The court, therefore, adopts the approach taken in the Restatement and will apply the "testamentary capacity" standard in this case.

Under the standard outlined above, plaintiff has established a genuine issue of material fact as to whether the decedent possessed the necessary mental capacity to validly amend the Declaration of Trust on January 27, 2001. Plaintiff has presented facts tending to show that Decedent was suffering from hallucinations; that he didn't know what he was signing; and that he lacked the capacity to make a decision regarding his DNR status. At the very least, there is a genuine issue of fact as to whether the decedent had knowledge "in a general way, without prompting, of his estate, and an understanding of the disposition he wished to make of it by his [trust], and of the persons and objects he desired to participate in his bounty." *See In re: Estate of Marquis*, 2003 ME 1971, 822 A.2d

8

1153.[2]  Defendant's motion for summary judgment as to Count I, is therefore DENIED.

### Count II: Undue Influence

In Count II of his complaint, plaintiff seeks a declaratory judgment that the defendant exerted undue influence over the decedent in connection with the execution of the amendment to the Declaration of Trust.

In Maine, undue influence has been construed to mean ". . . influence in connection with the execution of the will, and operating at the time the will is made, amounting to moral coercions, destroying free agency, or opportunity which could not be resisted, so that the testator, unable to withstand the influence, or too weak to resist it, was constrained to do that which was not his actual will but against it."[3]  *In re: Estate of Horne*, 2003 ME 73, ¶ 18, 822 A.2d 1177, 1181 (internal quotations and citations omitted). "The most prominent circumstances regarded as evidence of undue influence are: (1) the existence of a confidential relationship between the testator and the one who is asserted to have influenced him; and (2) the fact that the testator has disposed of his property in an unexpected or unnatural manner." *In re: Estate of Bridges*, 565 A.2d 316, 317 (Me. 1989).  In the presence of these factors, an inference of undue influence

[2] The court notes that Count I, seeking as it does, a declaration by the court that the decedent lacked the requisite mental capacity to amend his declaration of trust rather than money damages, sounds in equity and is not a question for a jury. *See Avery v. Whately*, 670 A.2d 922, 924-25 (Me. 1996).  Pursuant to M.R. Civ. P. 39(d) the court may try this issue with an advisory jury or, with the consent of the parties, try this issue "with a jury whose verdict has the same effect as if trial by jury had been a matter of right." *Id.*  Count I, therefore, will be tried to an advisory jury whose findings, while not binding on the court, may be adopted by it in its discretion.

[3] Although the court recognizes that the Law Court has drawn distinctions between the burdens of proof and the applicability of presumptions and inferences in the context of will contests and challenged inter vivos transfers of property, because the court is treating the trust at issue here as a will substitute, the inferences and burdens of proof applicable in will contests are similarly applicable here. *See e.g. Estate of Lewis*, 2001 ME 74, ¶¶ 5-7, *770 A.2d 619, 622* (explaining that a presumption of undue influence may arise in the context of an inter vivos transfer of property but, in the context of a will contest, only inferences and not presumptions may arise).

may arise though the plaintiff retains the burden to prove undue influence by clear and convincing evidence. *Id.*

Maine courts have previously found that undue influence can be found when mental infirmity caused by illness and medication tend to show that a decedent's capacity to resist the influence is diminished. *See Estate of Record*, 534 A.2d 1319, 1322-23 (Me. 1987). Here, the plaintiff's Opp. S.M.F. establishes that the defendant was the decedent's wife and business partner. Plaintiff has also presented support for the proposition that at the time the amendment to the declaration of trust was executed, the decedent was suffering from mental infirmity and physical distress. Further, plaintiff has established that the disposition of the trust assets under the amendment was markedly different from the disposition contained in the original trust and has presented evidence that the amended disposition was unexpected or unnatural. The plaintiff has, therefore, established a genuine issue of material fact as to whether the amendment was the result of undue influence and the defendant's motion for summary judgment as to Count II is, therefore, be DENIED.[4]

*Count III: Tortious Interference with an Expectancy*

Count III alleges that the defendant tortiously interfered with plaintiff's expected inheritance. Plaintiff seeks either a constructive trust or the value of the expectancy. The elements of a tortious interference with an expectancy claim include:

---

[4] Although plaintiff has argued that he is entitled to a jury trial on Count II because he is seeking money damages in the alternative, the court finds that Count II is primarily an equitable claim. *See DesMarais v. Desjardins*, 664 A.2d 840, 844-45 (Me. 1995) (explaining that the essence of a claim is derived from the pleadings and "when the primary recovery pursued is equitable, the inclusion of a request for money damages does not convert the proceeding into an action at law"). Because Count II was initially pled as an equitable claim distinct from the tortious interference claim, the court regards it as such and plaintiff is not entitled to a jury trial by right on Count II. *See Avery v. Whately*, 670 A.2d 922, 924-25 (Me. 1996) and *Cyr v. Cote*, 396 A.2d 1013, 1017 (Me. 1979). Count II will therefore be tried to an advisory jury along with Count I. *See supra* note 2.

10

> (1) the existence of an expectancy of inheritance; (2) an intentional interference by a defendant through tortious conduct, such as fraud, duress, or undue influence; (3) a reasonable certainty that the expectancy of inheritance would have been realized but for the defendant's interference; and (4) damage resulting from that interference.

*Morrill v. Morrill*, 1998 ME 133, ¶ 5, 712 A.2d 1039, 1041-42. *See also Plimpton v. Gerrard*, 668 A.2d 882, 885-86 (Me. 1995); and *Cyr v. Cote*, 396 A.2d 1013, 1018 (Me. 1979).

In this case, plaintiff's Opp. S.M.F. establishes a genuine issue of material fact as to each one of these elements. He has put forward facts tending to show that, under the original trust, he expected an inheritance; that the defendant, through undue influence, intentionally interfered with that expectancy; that but for defendant's interference, plaintiff would have received the inheritance contained in the original trust; and that he has suffered damage as a result. Defendant's motion for summary judgment as to count III should be DENIED and this count set for a binding jury trial. *See Avery v. Whately*, 670 A.2d 922 (Me. 1996) (holding that where there are legal and equitable claims in the same action the legal claims should be tried first and the court is bound by the findings of the jury on the legal claims when it later decides claims for equitable relief).

### Count IV: Breach of Fiduciary Duty

With respect to Count IV, which claims that Defendant Terry in her capacity as Trustee breached her fiduciary duty, plaintiff argues that as trustee of the amended trust, the defendant is a fiduciary and her failure to distribute any income from the trust to the plaintiff constitutes a breach of that duty. He contends that the passage of three and half years since his father's death, without any distribution by defendant reflects a misuse of the trust property. He argues further that because the amended declaration was the product of lack of capacity

11

and undue influence, defendant should not be able to profit from her allegedly improper conduct.

Defendant argues that plaintiff has failed to produce any witness or other evidence of a breach of her fiduciary duty. She claims that because the plaintiff has not produced any evidence in support of his claim, she is entitled to summary judgment. The defendant also cites to the plaintiff's deposition, in which he concedes that the only basis for the breach of fiduciary duty claim is failure to make disbursements despite his recognition that defendant "really could not make disbursements" given pending claims to trust assets. Defendant argues that without any evidence that she is improvidently overseeing the trust and the trust assets and without any additional grounds for a claim that she has breached her duty as trustee, plaintiff has failed to establish a genuine issue of material fact as to Count IV. The court agrees.

Plaintiff has not alleged any facts to support a contention that defendant's administration of the amended trust has been improper – his statement of material facts does not cite to the terms of the amendment nor suggest that any disbursements due under it have gone unpaid. Further, plaintiff has not disputed defendant's claim that the decedent's former wife is seeking to enforce an outstanding alimony order against the trust or their claim that the IRS is asserting claims for taxes against the trust that would make disbursements to beneficiaries improper. The defendant, therefore, is entitled to summary judgment as plaintiff has failed to establish any issue of material fact with regard to whether the terms of the trust are being appropriately carried out. *See* 18-A M.R.S.A. § 7-302. Defendant's motion for summary judgment as to this count is therefore GRANTED.

## The Role of Attorney MacColl at Trial

Although this issue has not been raised by motion of the parties, a question was raised at the trial management conference held on September 15, 2004 regarding the role of Attorney MacColl at trial, given the likelihood of his being called as a witness. At the hearing on the defendant's motion for summary judgment, Attorney MacColl confirmed that while he currently represents the defendant, he will likely be called by the defense as a witness at trial. Pursuant to M. Bar R. 3.4(g)(1), which prohibits an attorney from representing a client in pending litigation when the attorney is likely or ought to be called as a witness, the court orders that Attorney MacColl shall not represent the defendant at trial. By agreement of the parties, however, Attorney MacColl may participate fully in any settlement negotiations between the parties.

The entry is

Defendant's Motion to Strike the Affidavit of Noah Ricci is DENIED.
Defendant's Motion for Leave to Correct Reply to Plaintiff's So-Called "Additional Material Facts" is GRANTED.
Defendant's Motion for Summary Judgment as to Counts I, II and III is DENIED.
Defendant's Motion for Summary Judgment as Count IV is GRANTED.

Dated at Portland, Maine this _8th_ day of _November_, 2004.

Robert E. Crowley
Justice, Superior Court

SALLY A BOOGIE CLERK
CUMBERLAND COUNTY SUPERIOR COURT
PO BOX 287
PORTLAND ME 04112

SCOTT LYNCH ESQ
HORNBLOWER & LYNCH
PO BOX 116
LEWISTON ME 04243-0116

First Class Mail

First Class Mail

SALLY A BOURGET CLERK
CUMBERLAND COUNTY SUPERIOR COURT
PO BOX 287
PORTLAND ME 04112

EDWARD MACCOLL ESQ
THOMPSON BULL FUREY BASS & MACCOLL
PO BOX 447
PORTLAND ME 04112

First Class Mail
First Class Mail