STATE OF MAINE
CUMBERLAND, ss.

STATE OF MAINE SUPERIOR COURT
CUMBERLAND. CIVIL ACTION
CLERK'S OFFICE
Docket No. CV-08-025

2009 JUN -3 P 3: 15    -JBW -CUM - 6/3/2009

CLEMENT THERIAULT,

        Plaintiff

v.

KENNETH C. BURNHAM,

        Defendant

## BEFORE THE COURT

Before the court is Defendant Kenneth Burnham's motion for summary judgment.[1]

## PROCEDURAL HISTORY

On January 16, 2008, Plaintiff Clement Theriault (Theriault) filed a two-count complaint against Defendant Kenneth Burnham (Burnham). Count I alleges that Burnham tortiously interfered with an expectancy. Specifically, Theriault alleges that Burnham tortiously interfered with a property bequest that Theriault was to receive by the late Helen Dingley (Ms. Dingley), but who ultimately bequested the property to Burnham. Count II alleges intentional infliction of emotional distress, but Theriault is no longer pursuing this claim. Pl.'s Opp'n to Def.'s Mot. Summ. J. at 3, n. 1.

## FACTUAL BACKGROUND

### I.    Undisputed Facts

Ms. Dingley was born on January 12, 1915. She died on September 17, 2007, at the age of 92. At all relevant times to this lawsuit, Ms. Dingley owned real property

---

[1] Defendant "moves pursuant to M.R.Civ.P. 12(b)(6) *and* 56 for summary judgment in his favor." Def.'s Mot. Summ. J. at 1 (emphasis added). This order addresses Defendant Burnham's motion solely within the context of M.R. Civ. P. 56. See *MSBA Practice Series Maine Rules of Civil Procedure* 389-390 (Hon. Donald G. Alexander et al. eds., 2008) (discussing the important differences between pure motion to dismiss practice and summary judgment practice).

located at 1 Kent's Landing in Naples, Maine (Kent's Landing). Theriault and Ms. Dingley have known each other for decades, he was a friend of her long deceased son. Throughout the years, Theriault frequented the beach at Kent's Landing with his friends and family. At one point in time, in the 1980s, he even lived on the property and paid rent. In 2000, Theriault placed a camper of his own on Kent's Landing and used it until Ms. Dingley's death in 2007. Theriault had gatherings at his camper. At times Ms. Dingley was a part of these gatherings, but at other times Ms. Dingley disapproved of them because they had become problematic for the town of Naples. In the early 1990s, Ms. Dingley told Theriault that she had a will in place that left Kent's Landing to him. A later will, executed in 2001, left Kent's Landing to Theriault.

In 2000, Ms. Dingley and Burnham became acquaintances and eventually friends. Soon thereafter, Burnham moved into a trailer on Kent's Landing. Burnham never paid any rent to live there. Burnham and Ms. Dingley did, however, agree that Burnham could live on the property rent-free if he assisted her with taking care of the property and other matters. Burnham did, in fact, provide such assistance. Burnham's tasks increased over time. Initially, he did primarily property maintenance and other small tasks for Ms. Dingley. As Ms. Dingley's health deteriorated over the years, Burnham took on more responsibilities. Ultimately, Burnham was not only Ms. Dingley's property caretaker but also her primary care giver and chauffer. Indeed, Burnham drove Ms. Dingley anywhere she needed to go because she had lost her vision to such a degree that she could no longer operate a motor vehicle. Ms. Dingley even purchased a 2006 Lincoln for such purposes.[2]

---

[2] It is undisputed that Ms. Dingley never drove this vehicle, and that Burnham used this car at times for his own purposes while he and Ms. Dingley were on an outing.

2

Ms. Dingley's poor eyesight also inhibited her from independently overseeing and maintaining her personal finances. Ms. Dingley engaged the help of Burnham and an associate at her local bank to ensure accurate record keeping and timely bill paying. For the last year and half to two years of her life, Burnham wrote out virtually all of Ms. Dingley's checks, and then presented them to her for signature because she could not see well enough to write out the checks herself.

In the last several years of her life, in addition to her vision problems, Ms. Dingley suffered from severe cardiac difficulties, and other medical conditions, including hypertension. As indicated above, these conditions rendered her increasingly dependent on the assistance of others with respect to a variety of matters.

## II.    Disputed Facts

Theriault argues that Ms. Dingley's medical conditions, fragility, and age, made her more impressionable, vulnerable, and/or easily influenced than the average person, and she was particularly vulnerable to being influenced to take actions against her will by someone on whom she was dependent.[3] Pl.'s Add'l S. M. F. ¶¶ 45-47. The parties also dispute the reasonable inferences that can be drawn from Ms. Dingley's decision to terminate her relationship with her longtime attorney, C. Martin "Sonny" Berman, and instead retain attorney Robert Neault. Pl.'s Add'l S. M. F. ¶¶ 73-82. Attorney Neault represented Burnham in various matters throughout the years. *Id.* The parties also dispute the inferences regarding Burnham taking Ms. Dingley to see Attorney Neault for her will revisions. *Id.*

---

[3] Defendant objects to the affidavit filed by Carlyle Voss, M.D. because, *inter alia*, it is not based on personal knowledge. Pl.'s Add'l S. M. F. ¶¶ 45-47. This argument goes to weight and not admissibility. Defendant also objects to this affidavit because "is not a statement of fact, but of the opinion of an expert witness." *Id.* "Furthermore, Burnham objects to this statement, as testimony by Voss is not admissible, since he is not qualified to offer opinions on the mental status of someone he never met based on her age and physical condition alone, nor is Voss offering an opinion . . . on a matter beyond the ken of the ordinary juror. Def.'s Reply to Pl.'s Add'l S. M. F. ¶¶ 45. The court need not reach this issue at this time because there is enough other evidence regarding Ms. Dingley's mental status to resolve defendant's motion without regard to Voss' affidavit.

3

## DISCUSSION

### I. Summary Judgment

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *E.g., Johnson v. McNeil*, 2002 ME 99, ¶ 8, 800 A.2d 702, 704. The facts must be considered in the light most favorable to the non-moving party. *Id.* Thus, for purposes of summary judgment, any factual disputes must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. *Rodrigue v. Rodrigue*, 1997 ME 99, ¶ 8, 694 A.2d 924, 926.

### II. Standard of Proof

The parties disagree as to the appropriate standard of proof to be applied in this case. Burnham contends, incorrectly, that Theriault must prove his claim for fraud by clear and convincing evidence. Def.'s Mot. Summ. J. at 9. While Burnham is correct in his assertion that a claim of fraud often requires proof by clear and convincing evidence, *see Arbour v. Hazelton*, 534 A.2d 1303, 1305 (Me. 1987),[4] in an action for tortious interference with an expectancy, a plaintiff only must proof his or her case by a preponderance of the evidence. *See, e.g., Petit v. Key Bank of Maine*, 688 A.2d 427, 431

---

[4] Defendant's reliance on *Maine Eye Care Assocs. P.A. v. Gorman*, 2006 ME 15, 890 A.2d 707 is misplaced. *Maine Eye Care* re-affirmed that trial courts should apply the preponderance of the evidence standard in cases for tortious interference with an expectancy. *Id.* ¶ 16, 890 A.2d at 717. The *Maine Eye Care* court did, however, state that an independent claim of fraudulent misrepresentation requires proof by clear and convincing evidence (stating that the Law Court does "not require clear and convincing evidence to prove the element of fraud in a claim of tortious interference with an advantageous economic relationship, [and it] acknowledge[s] that fraudulent misrepresentation claims do require proof by clear and convincing evidence").

4

(Me. 1996) (rejecting the application of the clear and convincing standard in an action for wrongful interference with an advantageous existing valid contract or prospective economic advantage); *Harmon v. Harmon*, 404 A.2d 1020, 1026 (Me. 1979) (applying the preponderance of the evidence standard for claim of tortious interference by fraud and undue influence with plaintiff's expected legacy).[5] If, however, a plaintiff alleging tortious interference seeks punitive damages, that portion of the claim must be proven by clear and convincing evidence. *Petit*, 688 A.2d at 433. Here, Theriault does not seek punitive damages; therefore, the case is governed by the general standard of proof for civil actions, namely preponderance of the evidence.

## III. Burden of Proof

The parties also disagree as to who bears the burden of proof in this case. Theriault argues he has put forward a preponderance of the evidence to establish a confidential relationship between Burnham and Ms. Dingley. Accordingly, he argues, a presumption of undue influence arises thereby shifting the burden to Burnham to establish the fairness of the transaction. Burnham, in arguing that Theriault's position on the presumption is "erroneous," conflates a will contest and the tort for interference with an expectancy, and consequently, misstates the law. Def.'s Reply at 2-3, *see also supra* note 5 (discussing the differences in the two actions).

In a tort for interference with an expected legacy or a gift under a will, if there is a "confidential relationship between the 'parties to a deed, gift, contract, or the like' . . .

---

[5] Mistakenly, Defendant conflates two types of actions: a will contest and the tort for interference with an expectancy. *See, e.g.*, Def.'s Mot. Summ. J. at 13, Def.'s Reply at 2. These two actions have different standards of proof, burdens of proof, and presumptions. For example, in a will contest, a contestant must establish undue influence by clear and convincing evidence. *Estate of Lewis*, 2001 ME 74, ¶ 7, 770 A.2d 619, 623. As discussed below, an interference with an expectancy claim must only be proven by a preponderance of the evidence. The matter before the court is not a will contest; rather, it is a tort claim against an individual, namely Kenneth Burnham, not the estate of Helen Dingley. Although the expectancy in this case is that of a legacy included in Ms. Dingley's will, the fact that the alleged tort resulted in Plaintiff's disinheritance under Ms. Dingley's will does not transform this independent tort action into a will contest. Moreover, Plaintiff's claim is not against the estate nor is it an attack on the testamentary capacity of Ms. Dingley.

the burden shifts." *DesMarais v. Desjardins*, 664 A.2d 840, 844 (Me. 1995). In other words, "[t]he law imposes a presumption of undue influence on the part of the superior party in a confidential relationship if the superior patty [sic] obtains a benefit from a transaction between the parties." *Id.* A similar presumption arises involving an *inter vivos* transfer of property where there is a confidential relationship. *Estate of Lewis*, 2001 ME 74, ¶ 5, 770 A.2d at 621-22. In contrast, in a will contest if there is a confidential relationship there is only an inference of undue influence, which the court may accept or reject. *Id.* (citing 18-A M.R.S.A. § 3-407).[6]

Here, the claim before the court is an independent tort and not a will contest. Thus, if Theriault can prove by a preponderance of the evidence that Burnham and Ms. Dingley shared a confidential relationship then the presumption of undue influence will arise and the burden will shift to Burnham to prove the fairness of the bequest. The definition of "confidential relationship" and the merits of Theriault's assertion thereof are discussed below in Section V(C).

## IV. Wrongful Interference with an Expected Legacy under a Will

Maine recognizes the tort of wrongful interference with an expected legacy or gift under a will.[7] *DesMarais*, 664 A.2d at 843 (citing *Cyr v. Cote*, 396 A.2d 1013, 1018 (Me. 1979)). It has done so for decades; in fact, it has arguably the most developed jurisprudence on the tort in the country.[8] The essence of such a claim is that "but for the

---

[6] Title 18-A M.R.S. § 3-407 (2008) states in relevant part: "Contestants of a will have the burden of establishing lack of testamentary intent or capacity, undue influence, fraud, duress, mistake or revocation."

[7] Maine is one of at least twenty-five states that recognize the tort of wrongful interference with an expected legacy under a will. Diane J. Klein, *Article: River Deep, Mountain High, Heir Disappointed: Tortious Interference with Expectation of Inheritance--A Survey with Analysis of State Approaches in the Mountain States*, 45 Idaho L. Rev. 1, 26 (2008).

[8] Diane J. Klein, *Article: A Disappointed Yankee in Connecticut (or nearby) Probate Court: Tortious Interference with Expectation of Inheritance-A Survey with Analysis of State Approaches in the First, Second, and Third Circuits*, 66 U. Pitt. L. Rev. 235, 253-264 (2004).

tortious interference of another, [the plaintiff] would in all likelihood have received a gift or a specific profit from a transaction." *Harmon*, 404 A.2d at 1024.

The Law Court adopted the Restatement (Second) of Torts formulation of the tort. *Morrill v. Morrill*, 1998 ME 133, ¶ 7, 12 A.2d 1039, 1041. Under the Restatement:

> One who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift.

Restatement (Second) of Torts 774B (1979). Another formulation of a tortious interference claim is included in the Maine Jury Instruction Manual:

> For a wrongful interference with an inheritance claim, the plaintiff must prove, by a preponderance of the evidence, that
>
>> 1. the person from whom [from whose estate] plaintiff expected to receive a benefit [inheritance] is deceased,
>>
>> 2. the plaintiff reasonably expected a benefit [inheritance] from the deceased or the deceased's estate,
>>
>> 3. the defendant, by [fraud] [intimidation] or undue influence upon the deceased,
>>
>> 4. interfered with plaintiff's expectancy,
>>
>> 5. causing the plaintiff damages.

Alexander, *Maine Jury Instruction Manual* § 7-34 (4th ed. 2008) (hereinafter *"Maine Jury Instruction Manual"*).[9]

Tortious interference with an expectancy can take many forms. *See Cyr*, 396 A.2d at 1018 (plaintiff can recover if defendant tortiously prevented the relevant testator from

---

[9] In this case, only the third and forth elements of the tort are truly disputed by the parties. It is undisputed that Ms. Dingley is deceased. Theriault reasonably had an expectation to take the property under Ms. Dingley's will because he had been the legatee under a prior properly executed will. As to the fourth element, it is clear that Burnham was the sole taker of the property. The issue is causation. Were Burnham's actions the "but for" cause of as to why Theriault did not take the property under the will? If so, then the calculation of damages must be the value of the property had he received it pursuant to Ms. Dingley's will. According to Plaintiff's C.P.A., Theriault will need to receive $992,250 in damages in order to account for value of the tax-free inheritance of $714,000 (less the value of the reverse mortgage on the property). Before the court, or more appropriately the fact finder, reaches these issues it must first find tortious conduct, namely fraud, duress or undue influence.

making a will favorable to the plaintiff; tortiously caused the testator to revoke or alter a will that was favorable to the plaintiff; tortiously prevented the testator from revoking a will; or tortiously caused the testator to convey *inter vivos* that which would have passed under a will to the plaintiff).

Thus, in order to survive summary judgment, Theriault must establish that Burnham tortiously prevented Ms. Dingley from making a will favorable to Theriault; tortiously caused Ms. Dingley to revoke or alter a will more favorable to Theriault; prevented Ms. Dingley from revoking a will unfavorable to Theriault; or unlawfully caused Dingley to convey *inter vivos* property that would have passed to Theriault through the will. *See Burdzel v. Sobus*, 2000 ME 84, ¶ 9, 750 A.2d 573, 576.

## V.     Interference by Fraud, Duress, or Undue Influence

Tortious interference may be proven in one of three ways: fraud, duress, or undue influence. At the hearing on the motion, Theriault waived the claim that Burnham tortiously interfered by fraud[10] or duress[11]. Therefore, the court will discuss only proof of tortuous interference by undue influence below.

Without a viable claim based on fraud or intimidation, Theriault must put forward a *prima facie* case for interference by undue influence in order to survive

---

[10] The elements for tortious interference by fraud are: (1) making a false representation; (2) of a material fact; (3) with knowledge of its falsity or in reckless disregard of whether it is true or false; (4) for the purpose of inducing another to act or refrain from acting in reliance on it; and (5) the other person justifiably relies on the representation as true and acts upon it to the damage of the plaintiff. *Rutland v. Mullen*, 2002 ME 98, ¶ 14, 798 A.2d 1104, 1111; *see also Maine Jury Instruction Manual* § 7-33 (listing elements).Theriault fails to identify in his opposition to summary judgment any evidence to support his claim for interference by fraud.

[11] A person engages in intimidation when that person: (1) communicates a statement [or threat] to a third person; (2) that suggests adverse physical, economic or emotional consequences to the third person; (3) for the purpose of inducing the third person to act [or fail to act] regarding the plaintiff; and (4) the third person acts based on the statement or threat, damaging the plaintiff. *Maine Jury Instruction Manual* § 7-33. Put differently, "[i]nterference by intimidation involves *unlawful* coercion or extortion." *Rutland*, 2002 ME 98, ¶ 16, 798 A.2d at 1111 (emphasis added). The record is devoid of any facts that show unlawful coercion or extortion. It is undisputed that Burnham repeatedly threatened Ms. Dingley that he would leave the property and cease providing her with essential services. Importantly, however, Burnham was under no legal obligation to care for Ms. Dingley. Therefore, Theriault cannot prove his claim for tortious interference by intimidation or duress.

8

summary judgment. The law will not reward a will beneficiary who exercised undue influence against a testator in order to take pursuant to his or her will.

A person exercises undue influence upon another when he or she engages in *"unfair persuasion"* of a person who "is under the domination of the person exercising the persuasion" or "who by virtue of the relationship between them is justified in assuming that that person will not act in a manner inconsistent with his welfare." *DesMarais*, 664 A.2d at 843 (emphasis added), *see also Maine Jury Instruction Manual* § 7-34. There is an exception, however, if a plaintiff can demonstrate that the two individuals shared a "confidential relationship."

If a plaintiff can demonstrate that there was a confidential relationship between the decedent and the person allegedly exerting the influence then undue influence is presumed. *Ruebsamen v. Maddocks*, 340 A.2d 31, 37 (Me. 1975), *see also Maine Jury Instruction Manual* § 7-34. The burden shifts to the defendant to demonstrate that the transaction was entirely fair or that it is at least as likely that undue influence did not exist as it is likely that undue influence did exist. *Ruebsamen v. Maddocks*, 340 A.2d 31, 37 (Me. 1975), *see also Maine Jury Instruction Manual* § 7-34. "A confidential relationship exists if there is an actual placing of trust and confidence in fact by one party in another and a great disparity of position and influence between the parties to the relation." *DesMarais*, 664 A.2d at 844, n. 8 (internal quotations omitted), *see also Maine Jury Instruction Manual* § 7-34. This is a question of fact. *Estate of Campbell*, 1997 ME 212, ¶ 6, 704 A.2d 329, 331.

A relationship by blood or marriage, standing alone, does not meet the definition of a confidential relationship. *See Ruebsamen*, 340 A.2d at 35. Similarly, a creditor/debtor relationship, standing alone, does not compel a finding of a confidential relationship. There must be additional evidence that demonstrates the placing of trust,

9

in fact, in another and the disparate positions between the individuals. For example, in *Sylvester v. Benjamin*, the trial court found that the decedent and his sister were not in a confidential relationship. 2001 ME 48, ¶ 10, 767 A.2d 297, 300.[12] In considering the evidence from healthcare workers, the court found that the decedent had a "strong streak of independence." *Id.* Additionally, the court relied on testimony from family members indicating that the decedent lived independently at his home until his death. *Id.* The court held that "the record was 'devoid of any credible evidence which establishes that [the decedent's] relationship with his sister was anything beyond that of one sibling helping another.'" *Id.* This was so, despite the fact that his sister helped the decedent "with shopping, getting to appointments, routine banking, and monitoring his home healthcare." *Id.*

Theriault presents the following evidence to demonstrate that Burnham and Ms. Dingley had a confidential relationship. It is well established that Ms. Dingley's substantial loss of vision prohibited her from driving and also rendered her unable to manage her finances without outside assistance. Burnham helped on both fronts; he drove Ms. Dingley to most, if not all of her appointments, and he filled out checks, at Ms. Dingley's direction, and presented them to her for her signature. Ms. Dingley also had severe cardiac difficulties and other medical conditions. However, testimony from Ms. Dingley's attorney, doctor, and friends that knew her well all stated that Ms. Dingley retained her mental wherewithal up until her death. There is no evidence before the court that Burnham, in contrast to Ms. Dingley, was in any way physically and/ or mentally limited.

---

[12] Superceded in *Estate of Miller*, 2008 ME 176, 960 A.2d 1140 due to an amendment in the Improvident Transfer Act, 33 M.R.S. §§ 1021-1025 (2007). This amendment does not affect this analysis.

In reviewing this evidence in a light most favorable to the non-moving party it is evident that Theriault presents a *prima facie* case as to whether Ms. Dingley and Burnham shared a confidential relationship. On the whole, Ms. Dingley's reliance on Burnham was not simply for extraordinary or superfluous desires. Rather, Ms. Dingley was extremely dependent on Burnham for some of her most basic necessities (e.g., transportation to and from doctor's appointments and conducting ministerial banking). This evidence sufficiently demonstrates that Ms. Dingley put trust and confidence in Burnham. To hold otherwise, would be inappropriate because surely there is trust and confidence in the person who assists in the management of home finances and in one's access to healthcare. Thus, Theriault has presented a *prima facie* case to demonstrate that Ms. Dingley placed trust and confidence in Burnham.

Regarding the disparity of positions and the influence of the two parties, the evidence is less compelling, but it is nevertheless sufficient to survive summary judgment. Ms. Dingley and Burnham occupied different positions in terms of their physical health. Ms. Dingley had substantial physical limitations and Burnham was sufficiently agile to take care of his own needs and those of Ms. Dingley. Additionally, Burnham was in a position of influence in the sense that he could direct different aspects of Ms. Dingley's day-to-day life. For example, Burnham provided Ms. Dingley with opportunities for outings, but they were at his discretion.

Because the existence of a confidential relationship is a question of fact, and because Theriault has presented a *prima facie* case for this relationship, the court denies Burnham's motion for summary judgment insofar as it relates to Theriault's claim for wrongful interference by undue influence.

At trial, if the jury finds that Ms. Dingley and Burnham had a confidential relationship then Burnham has the burden of proving that the entire transaction (i.e.

11

Ms. Dingley's decision to change the beneficiaries of her estate from Theriault to Burnham) was entirely fair, or prove that it is at least as likely that undue influence did not exist as it is likely that undue influence did exist. *See Ruebsamen*, 340 A.2d at 37; *see also Maine Jury Instruction Manual* § 7-34.

## DECISION

The court GRANTS Defendant's motion for summary judgment insofar as it relates to Plaintiff's claim for tortious interference by fraud.

The court GRANTS Defendant's motion for summary judgment insofar as it relates to Plaintiff's claim for tortious interference by intimidation.

The court DENIES Defendant's motion for summary judgment insofar as it relates to Plaintiff's claim for wrongful interference by undue influence.

June 3, 2009

Joyce A. Wheeler, Justice

12

CLEMENT THERIAULT VS KENNETH C BURNHAM SR
UTN:AOCSsr  -2008-0005742                        CASE #:PORSC-CV-2008-00025
--------------------------------------------------------------------------------
SEL VD                                   REPRESENTATION TYPE       DATE
01 0000003096 ATTORNEY:BLOOM, BARRI
ADDR:465 CONGRESS STREET PO BOX 9545 PORTLAND ME 04112-9545
     F FOR:KENNETH C BURNHAM, SR                 DEF          RTND   03/04/2008

02 0000002406 ATTORNEY:LAMBERT, JOHN
ADDR:477 CONGRESS STREET 14TH FLOOR PO BOX 15215 PORTLAND ME 04112-5215
     F FOR:CLEMENT THERIAULT                     PL           RTND   01/16/2008


              Enter Option: A=Add, B+Sel=Browse, M=More, R+Sel=RltnEdit:

Select the EXIT KEY for page selection line.