2001 ME 48

**Estate of Roland SYLVESTER**

v.

**Ruth BENJAMIN.**

Supreme Judicial Court of Maine.

Argued: Jan. 9, 2001.
Decided: March 14, 2001.

Susan E. Oram (orally), Bonneau & Geismar LLC, Lewiston, for appellant.

Richard Golden (orally), Clifford & Golden, P.A., Lisbon Falls, for appellee.

Panel: CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] Janice Groton, daughter of Roland Sylvester and personal representative of his estate, appeals from an order of the

Sagadahoc County Probate Court (*Voorhees, J.*) granting a judgment to Ruth Benjamin, Sylvester's sister, as to all claims. Groton contends that the Probate Court erred in: (1) applying an incorrect legal standard when evaluating the evidence on her undue influence claim; (2) finding that the cause of action created by the Improvident Transfer Act, 33 M.R.S.A. §§ 1021–1025 (1998), did not survive Sylvester's death; and (3) failing to impose a constructive trust on the transferred accounts. Because we determine that the court did not err in assessing Groton's undue influence claim, the Improvident Transfer Act does not apply to the present case, and the constructive trust was properly denied, we affirm the judgment.

## I. FACTUAL BACKGROUND

[¶ 2] Roland Sylvester died intestate at the age of eighty-seven. He was survived by three children including his daughter, Janice Groton, who was appointed personal representative of his estate. Sylvester was also survived by siblings, among them his sister, Ruth Benjamin, who had routinely assisted Sylvester with his affairs. Upon his death, Sylvester's assets included bank accounts and certificates of deposit, held at Peoples Heritage Bank and Mechanics Savings Bank, totaling $125,881. When Sylvester was eighty-six years old, Benjamin's name had been added to these accounts as a joint tenant.

[¶ 3] Groton, as personal representative, commenced a probate proceeding seeking to recover these assets as part of Sylvester's estate. Groton asserted a claim under the Improvident Transfer Act, 33 M.R.S.A. §§ 1021–1025, as well as claims for undue influence, constructive trust, and conversion.

[¶ 4] A hearing took place where both parties presented evidence as to Sylvester's level of independence and state of mind at the time of the transfers. The testimony of some of Sylvester's caregivers indicated that Sylvester suffered from a certain level of confusion. Their testimony also indicated that home healthcare workers had urged Sylvester to execute a power of attorney, but that he had refused. Other witnesses, including some of Sylvester's relatives and a neighbor, testified that although Benjamin assisted Sylvester frequently, Sylvester lived independently at his home until his death. Their testimony also indicated that Sylvester was able to drive an automobile on short trips in the communities around his home.

[¶ 5] After the hearing, the court determined that the cause of action under the Improvident Transfer Act did not survive Sylvester's death. The court also found that the evidence was insufficient to establish Groton's undue influence, constructive trust, and conversion claims. This appeal followed.

## II. UNDUE INFLUENCE

[¶ 6] A common law undue influence action seeks to avoid or impose a constructive trust on a transfer that was the product of undue influence. *See Ruebsamen v. Maddocks*, 340 A.2d 31, 34–38 (Me.1975). A presumption of undue influence arises when the existence of a confidential relationship between two parties has been established. *Id.* at 36–37. *See also Estate of Campbell*, 1997 ME 212, ¶¶ 8–9, 704 A.2d 329, 331–32. *Campbell* sets forth a two-part test for determining whether a confidential relationship exists: (1) "the actual placing of trust and confidence in fact by one party in another"; and (2) "a great disparity of position and influence between the parties to the relation." *Id.* at ¶ 8, 704 A.2d at 331 (quoting *Ruebsamen*, 340 A.2d at 35).

[¶ 7] The Probate Court found that while the evidence established the "actual placing of a trust and confidence" by Sylvester in Benjamin, this evidence was not sufficient to find a "great legal 'disparity of position and influence' between the two parties." As a result, the Probate Court concluded that no confidential relationship

existed, and Groton was not entitled to the presumption of undue influence.

■ [¶ 8] Groton argues that where there is evidence of trusting and a blood relationship existed, a confidential relationship is established, and great disparity of influence and position need not be found. To support this claim, Groton points to a sentence in *Campbell* which states:

> That the parties are related by blood or marriage may lead a court to find that a confidential relation exists, where there is evidence as to trusting and where the blood or family relationship is in a close degree so that the imposition of great trust and the letting down of all guards and bars is natural.

*Id.* This sentence indicates that a blood or family relationship of the parties is a factor for the court to consider in determining whether or not a confidential relationship was established. However, under *Campbell*, a finding of great disparity of position and influence remains a necessary prerequisite to a determination that a confidential relationship exists, even where the parties are related. Both parts of the *Campbell* test must be applied, and the court did not err in doing so. *See, e.g., Moulton v. Moulton,* 1998 ME 31, ¶ 5, 707 A.2d 74, 76; *Avery v. Whatley,* 670 A.2d 922, 925 (Me.1996); *Christman v. Parrotta,* 361 A.2d 921, 925 (Me.1976).

■ [¶ 9] "The existence of a confidential relationship is a question of fact." *Campbell,* 1997 ME 212, ¶ 6, 704 A.2d at 331 (citing *Ruebsamen,* 340 A.2d at 35). "Issues of fact are reviewed for clear error." *Id.* (citing M.R. Civ. P. 52(a); *Van-Voorhees v. Dodge,* 679 A.2d 1077, 1080 (Me.1996)). "A trial court's factual finding is 'clearly erroneous' only if there is no competent evidence in the record to support it." *Id.* A party with the burden of proof can "prevail on a sufficiency of the evidence challenge to a finding that her burden has not been met only if she demonstrates that a contrary finding is compelled by the evidence." *Westleigh v. Conger,* 2000 ME 134, ¶ 12, 755 A.2d 518, 520.

[¶ 10] The court found that Sylvester had a "strong streak of independence," citing the testimony of healthcare workers that Sylvester had refused to execute a power of attorney. The court also cited testimony including that of Sylvester's siblings, nephew, neighbor, and Benjamin herself, in concluding that Sylvester continued to live independently at his home until his death. The court found that while their testimony indicated that Benjamin helped Sylvester with shopping, getting to appointments, routine banking, and monitoring his home healthcare, the record was "devoid of any credible evidence which establishes that Mr. Sylvester's relationship with his sister was anything beyond that of one sibling helping another." The court's conclusion that, based on the evidence, Groton failed to establish that a disparity of position existed between Sylvester and his sister was not clearly erroneous, and a contrary conclusion is not compelled by the evidence.

## III. IMPROVIDENT TRANSFER ACT

■ [¶ 11] The Improvident Transfer Act, 33 M.R.S.A. §§ 1021–1025, protects elderly individuals against making transfers of property as a result of undue influence. It establishes a statutory presumption of undue influence when an elderly dependent person transfers property to another person in the context of a confidential or fiduciary relationship for less than full consideration. *See* 33 M.R.S.A. § 1022.[1]

---

1. Section 1022(1) states:

 1. Presumption. In any transfer of real estate or major transfer of personal property or money for less than full consideration by an elderly person who is dependent on others to a person with whom the elderly dependent person has a confidential or fiduciary relationship, it shall be presumed that the transfer was the result of undue influence, unless the elderly dependent person was represented in the transfer by independent counsel. When

[¶ 12] The applicability of the Improvident Transfer Act must be examined, because if its statutory presumption should have been available to Groton, it would have shifted the burden of proof on the undue influence claim. Sylvester could have raised the statutory presumption of undue influence had he brought an improvident transfer action while he was living.[2] The issue is whether Groton, as personal representative of Sylvester's estate, was entitled to bring an improvident transfer claim on behalf of the estate.

[¶ 13] "Statutory interpretation is a question of law that we review de novo." *Dep't of Human Servs. ex rel. Hampson v. Hager*, 2000 ME 140, ¶ 20, 756 A.2d 489, 493. When interpreting a statute we first look at the plain meaning of the statutory language seeking to give effect to the legislative intent. *See Stromberg–Carlson Corp. v. State Tax Assessor*, 2001 ME 11, ¶ 9, 765 A.2d 566. We consider the whole statutory scheme for which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved. *Id.*

the elderly dependent person successfully raises the presumption of undue influence by a preponderance of the evidence and when the transferee fails to rebut the presumption, the elderly dependent person shall be entitled to avoid the transfer, and be entitled to the relief set forth in section 1024.
. . . .
Section 1021(2) defines an elderly person as "a person who is 60 years of age or older." Section 1021(1) defines "dependent," with respect to an elderly person, as being "wholly or partially dependent upon one or more other persons for care or support, either emotional or physical," because the elderly person either "[s]uffers from a significant limitation in mobility, vision, hearing, emotional or mental functioning or the ability to read or write," or "[i]s suffering or recovering from a major illness or is facing or recovering from major surgery."
Section 1022(2)(A) enumerates the types of relationships deemed to be "confidential or fiduciary," and includes "[a] family relationship between the elderly dependent person and the transferee . . . ."
Section 1023(1) sets forth the relief available, stating "[a] civil action may be brought

[¶ 14] Looking at the plain meaning of the Improvident Transfer Act, section 1023 states that "[a] civil action may be brought to obtain relief under this chapter by an elderly dependent person or that person's legal representative." Groton contends that the words "that person's legal representative" includes a representative of the estate. Although "legal representative" is not defined by the statute, "personal representative" is generally defined in the Probate Code as including an "executor, administrator, successor personal representative, special administrator, and persons who perform substantially the same function under the law governing their status." 18–A M.R.S.A. § 1–201 (1998). The use of the term "legal representative" rather than "personal representative" suggests that the Legislature intended to permit only legal representatives of living individuals to bring claims under the Improvident Transfer Act.

[¶ 15] The legislative history supports this interpretation. The words "by an elderly dependent person or that person's

to obtain relief under this chapter by an elderly dependent person or that person's legal representative."

2. Title 33 M.R.S.A. § 1021(2) defines an elderly person as over sixty years old, and Sylvester was eighty-six at the time of the transfer. Section 1022(1) requires the transfer to be a "major transfer," "for less than full consideration," to a person with whom the elderly person had a "confidential relationship." Sylvester transferred money to Benjamin, with whom he had a "family relationship" (which is a confidential relationship under section 1022(2)(A)), in a sizeable amount and for less than full consideration.

Section 1021(1)(A) states that an elderly person is dependent when he or she "[s]uffers from a significant limitation in mobility, vision, hearing, emotional or mental functioning or the ability to read or write." The testimony as to whether Sylvester was dependent was conflicting, but the evidence indicated that he exhibited at least some confusion, and Sylvester himself would have been able to raise a genuine issue of material fact on this issue.

legal representative," were added to the law in 1989. Addressing the amendment, the statement of fact indicated who it intended to include and exclude:

Title 33, section 1023, subsection 1, clarifies that only an elderly dependent person may bring suit under this law. This change makes it clear that the 3rd parties, such as relatives who stand to inherit from an elderly dependent person, have no standing to sue. It also allows legal representatives of an elderly dependent person, such as a guardian, conservator, guardian ad litem or agent under a power of attorney, to bring suit on behalf of the elderly dependent person.

L.D. 745, Statement of Fact (114th Legis.1989). A personal representative can assert causes of action, on behalf of the estate, which accrued during the decedent's lifetime. In contrast, a guardian, conservator, guardian ad litem, or agent under a power of attorney, are all legal representatives acting on behalf of living individuals presently in need of assistance. The statement of fact indicates that the legislative intent was to allow a legal representative to pursue an improvident transfer claim where the elderly person is unable to bring suit on their own because of their dependency.

[¶ 16] The statement of fact for the legislation which became the present Improvident Transfer Act describes the harm resulting from improvident transfers which the Act was intended to remedy:

3. Section 3–703(c) states:

 Except as to proceedings which do not survive the death of the decedent, a personal representative of a decedent domiciled in this State at his death has the same standing to sue and be sued in the courts of this State and the courts of any other jurisdiction as his decedent had immediately prior to death.

4. Section 3–817(a) states:

 No personal action or cause of action shall be lost by the death of either party, but the same shall survive for and against the per-

At the time the transfer was made, it may have appeared to have been a means of qualifying for Medicaid or satisfying a need for lifelong care. It often turns out that none of these goals are met and that the elderly individual is left without any security with which to face old age.

L.D. 2204, Statement of Fact (113th Legis.1987). This statement also reveals that the aim of the statute was to provide for the welfare of the living elderly. Thus, the Probate Court did not err in finding that "the Act clearly reflects an intention on the part of the Legislature to provide elderly Maine residents with an immediate legal remedy during their lifetime in the event of an improvident transfer of any of their assets."

[¶ 17] The Probate Court's interpretation of the Improvident Transfer Act does not contravene the survivorship statutes, 18–A M.R.S.A. §§ 3–703(c)[3] and 3–817[4] (1998). Groton claims that she qualifies as a "personal representative of a decedent" under section 3–703(c). However, a prerequisite for her qualification is that the action "survive the death of the decedent." If an Improvident Transfer Act action, with its burden shifting feature, is interpreted to survive death, many perfectly valid transfers of real estate and personal property could be challenged by unhappy heirs, for up to six years after a decedent's death,[5] by a cause of action which the legislative history explicitly stated should be denied to the heirs during the dece-

sonal representative of the deceased, except that actions or causes of action for the recovery of penalties and forfeitures of money under penal statutes and proceedings in bastardy cases shall not survive the death of the defendant. A personal representative may seek relief from a judgment in an action to which the deceased was a party to the same extent that the deceased might have done so.

5. Section 1023(3) of the Act states that 14 M.R.S.A. § 752, with its six-year limitation of actions, governs actions under the Improvident Transfer Act.

dent's life.[6] The Legislature could not have intended such a result. A proceeding under the Improvident Transfer Act is not maintainable pursuant to the survivorship statutes.

[¶ 18] The improvident transfer statute continues to allow heirs or devisees to seek common law remedies, as noted in 33 M.R.S.A. § 1023.[7] Those who believe that undue influence has been exerted upon a deceased elderly individual may bring a common law claim of undue influence, such as was plead and decided on the merits here. A remedy therefore remains available to such claimants. However, the cause of action under the Improvident Transfer Act expires upon the death of the elderly person. Consequently, the Probate Court did not err in deciding that the improvident transfer statute was inapplicable to the present case.

## IV. CONSTRUCTIVE TRUST

[¶ 19] Because the court did not err in finding that no undue influence or conversion occurred, the court also did not err in not imposing a constructive trust. *See Campbell,* 704 A.2d at 330–31.

The entry is:

Judgment affirmed.

---

**6.** The Improvident Transfer Act includes other transfers made in the context of a confidential or fiduciary relationship, beyond family members and relatives, and including friends, neighbors, physicians, priests, attorneys, and others who provide paid or unpaid care and services. 33 M.R.S.A. § 1022(2).

**7.** Section 1023(2) states in part:

No relief obtained or granted under this section may in any way affect or limit the right, title and interest of good faith purchasers, mortgagees, holders of security interests or other 3rd parties who obtain an interest in the transferred property for value after its transfer from the elderly dependent person.