STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-03-19

H. TIMOTHY BREEN,
o/b/o CLEO A. BREEN,
a/k/a CLEO N. BREEN,

        Plaintiff

v.

REBECCA L. LUCAS, *et al.*,

        Defendants



DECISION AND ORDER

This matter is before the court on motion of Defendant Lawrence Gilman for summary judgment on Plaintiff's complaint and Plaintiff's motion for partial summary judgment on count IV of his complaint and on Defendants' counterclaim.

The case at bar arises out of an inter-family dispute concerning the expected distribution of the estate of Cleo A. Breen, a/k/a Cleo N. Breen ("Cleo"). Cleo is the mother of Plaintiff H. Timothy Breen ("Plaintiff" or "Timothy") and Defendant Rebecca Lucas ("Rebecca"). Cleo is also the grandmother of Rebecca's daughter, Defendant Wendy Lewis ("Wendy"), and the widow of Timothy's father and Rebecca's stepfather, the late Harold Breen ("Harold"). Defendant Lawrence Gilman ("Gilman") is the father of Wendy and the ex-husband of Rebecca.

On or about June 26, 2000, after the death of Harold, Cleo executed her last will and testament. Also on that date, Cleo executed a nondurable power of attorney in favor of Timothy, giving him sweeping power over and authority to manage her personal affairs. Sometime prior to December of 2001, Rebecca became aware of the existence of Cleo's will and its contents. Pursuant to its terms, Cleo makes bequests of $50,000 each to Rebecca and her sister, Deborah. The remainder of Cleo's estate, which

is comprised of various other valuable assets, including a home, mobile home park, deposit accounts and personal effects, is bequeathed entirely to Timothy. On or about December 14, 2001, Rebecca contacted Timothy to explain that she was upset and dissatisfied with the terms of Cleo's will. She also requested that the Plaintiff change the terms of the will, which he refused to do. A short time later, Rebecca also faxed the Plaintiff a letter that she wrote which also expressed her feelings of displeasure and sadness over the situation.

Over a year later, the terms of the will remained unchanged. Under circumstances and for reasons that are disputed, on February 3, 2003, Cleo executed two powers of attorney in favor of Wendy and Rebecca, respectively. In addition, also under disputed circumstances, a warranty deed was drafted, the terms of which transferred ownership of Cleo's home and mobile home park to Cleo and Rebecca as joint tenants for no consideration. This deed was signed by Cleo on February 6, 2003, and was witnessed by Wendy and notarized by Gilman. Additionally, on or about April 18, 2003, Cleo executed another power of attorney in favor of Wendy, which was also notarized by Gilman. Wendy destroyed this power of attorney after receiving a letter from Timothy's attorney, but before the present suit was commenced.

Beginning in or about November of 2001, Cleo started having trouble verbally communicating, and at various times pertinent to this suit in 2003, Rebecca was aware that Cleo was having difficulty expressing herself.

The Plaintiff commenced the present suit on or about May 12, 2003. Through this litigation, Timothy seeks to nullify the property transfer described above and to invalidate the powers of attorney executed in favor of Wendy and Rebecca. Timothy also seeks compensatory, consequential and punitive damages against all defendants jointly and severally stemming from various instances of alleged tortious conduct. The

Defendants answered and raised counterclaims. In their counterclaim, the Defendants seek an accounting of Timothy's handling of Cleo's financial affairs and a constructive trust over those portions of her estate that would have been inherited by them if not for the Plaintiff's interference, as well as damages and other just relief.

Defendant Gilman filed his motion for summary judgment on November 15, 2004. Timothy filed his motion for summary judgment on December 13, 2004. The Defendants filed their opposition to Plaintiff's motion on January 6, 2005.[1] The Plaintiff filed his reply to Defendants' opposition on January 18, 2005.[2]

The Law Court has explained that:

> Summary judgment is no longer an extreme remedy. It is simply a procedural device for obtaining judicial resolution of those matters that may be decided without fact-finding. Summary judgment is properly granted if the facts are not in dispute or, if the defendant has moved for summary judgment, the evidence favoring the plaintiff is insufficient to support a verdict for the plaintiff as a matter of law.

*Curtis v. Porter*, 2001 ME 158, ¶7, 784 A.2d 18, 21-22. Summary judgment is proper if the citations to the record found in the parties' Rule 56(h) statements demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Dickinson v. Clark*, 2001 ME 49, ¶ 4, 767 A.2d 303, 305. The party opposing summary judgment will be given the benefit of any reasonable inferences that can be drawn from the presented facts. *See Perkins v. Blake*, 2004 ME 86, ¶ 7, 853 A.2d 752, 755. "A fact is material if it has the potential to affect the outcome of the case under governing law". *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, n.3, 770 A.2d 653, 655, n.3 (citing *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575). "The invocation of the summary judgment procedure does not permit the court to decide an issue of fact, but only to determine whether a genuine issue of fact exists. The Court

---

[1] Three days late.

[2] Five days late.

cannot decide an issue of fact no matter how improbable seem the opposing party's chances of prevailing at trial". *Searles v. Trustees of St. Joseph's College*, 1997 ME 128, ¶ 6, 695 A.2d 1206, 1209 (quoting *Tallwood Land & Dev. Co. v. Botka*, 352 A.2d 753, 755 (Me. 1976)). To avoid a judgment as a matter of law for a defendant, a plaintiff must establish a *prima facie* case for each element of her cause of action. *See Fleming v. Gardner*, 658 A.2d 1074, 1076 (Me. 1995).

**Third Amended Complaint – Count I.**

The first cause of action raised against Gilman is stated in the complaint as "fraud, undue influence, conversion" and is brought by Timothy both individually and in his representative capacity for his mother, Cleo. Gilman states that Timothy cannot prove that he defrauded or unduly influenced anyone, or that he converted anything. Gilman notes that a defendant is liable for fraud if he (1) makes a false representation, (2) of material fact, (3) with knowledge of its falsity or in reckless disregard of whether it is true or false, (4) for the purpose of inducing another to act or to refrain from acting in reliance upon it, and (5) the plaintiff justifiably relies upon the representation as true and to her detriment. *See Letellier v. Small*, 400 A.2d 371, 376 (Me. 1979). The Defendant also notes that reliance is unjustified only if the plaintiff knows the representation is false or its falsity is obvious to the plaintiff. *See id.* Gilman asserts that Timothy has set forth no evidence whatsoever to prove the elements of fraud with regard to either the Plaintiff or his mother.

In addition, the Defendant highlights a two-part test used by the Courts to determine whether a confidential relationship exists, thereby giving rise to a presumption of undue influence underlying a particular property transfer. This test inquires as to (1) the actual placing of trust and confidence in fact by one party in another, and (2) whether there exists a great disparity of position and influence between

the parties to the relation. *See Estate of Sylvester v. Benjamin*, 2001 ME 48, ¶ 6, 767 A.2d 297, 299. The Defendant asserts that there is no evidence that he had a close relationship with Cleo prior to the real estate transfer and execution of the powers of attorney. In fact, he believes the evidence shows exactly the opposite.

Finally, Gilman sets forth the following elements of conversion: (1) a showing that the person claiming that his property was converted has a property interest in the property, (2) that he had the right to possession at the time of the alleged conversion, and (3) that he made a demand for its return that was denied by the holder[3]. *See Withers v. Hackett*, 1998 ME 164, ¶ 7, 714 A.2d 798, 800. Gilman notes that the complaint in this case alleges that Wendy "attempted" to obtain access to a certificate of deposit and passbook, that some unnamed person took a lawn tractor and made gifts of money to themselves, and that Rebecca took some jewelry. The Defendant asserts that even if all of these allegations are proven, there is no evidence that he was even aware of these activities, much less that he assisted in them.

In response, Timothy draws the Court's attention to perceived deficiencies in Gilman's notarizations of the deed and powers of attorney. In particular, the Plaintiff complains that Gilman had a prohibited conflict of interest, that he did not properly administer the oath to Cleo and that he should not have prepared the April 18th power of attorney in favor of Wendy. In support of these statements, Timothy provides an affidavit of a former director of Informed Notaries of Maine and current teacher of notary procedures, along with a copy of the Notary Public Handbook, which is published by the Department of the Secretary of State. The Plaintiff believes that this evidence alone is sufficient to defeat the Defendant's motion.

---

[3] The court also notes also the Law Court's holding that the person with the right to possession need only make a demand if the holder took the property rightfully, and where making such a demand would likely be unavailing. *See Withers v. Hackett*, 1998 ME 164, ¶ 7, 714 A.2d 798, 800.

In addition, Timothy also asserts that he should survive Gilman's motion based on evidence he has presented in support of a civil conspiracy existing between the three Defendants. The Plaintiff concedes upfront that Gilman himself did not actually perform each and every act comprising the various instances of alleged tortious conduct. However, Timothy notes that under Maine law, the existence of a civil conspiracy can permit a plaintiff to obtain vicarious liability against someone who did not himself perform a tortious act. *See Cohen v. Bowdoin*, 288 A.2d 106, 111-112 (Me. 1972).

With regard to the specific underlying torts, the Plaintiff first disagrees that his allegations of fraud are deficient. To the contrary, he summarily asserts that his opposition materials contain "significant evidence" of fraud. He also notes that Gilman's own statements reveal certain indicia of fraud, particularly that Gilman made representations to Cleo before executing the documents and that Cleo relied upon him in executing them. As for the remaining substantive content of count I of his complaint, the Plaintiff only briefly addresses the conversion issue, stating that Gilman assisted in the attempted conversion of a certificate of deposit held jointly by Cleo and Timothy by providing Wendy with the April 18th power of attorney, which she used to try to accomplish this purpose.

Based upon the Plaintiff's submissions, the gist of his claim of fraud appears to be that Cleo was somehow misled into signing the deed and powers of attorney and that she was unsure or unaware of the legal significance of what she was signing. As recognized by the Defendant, however, on summary judgment, a plaintiff alleging fraud must "produce evidence that demonstrates that the existence of each element of fraud is 'highly probable' rather than merely likely". *Barnes v. Zappia*, 658 A.2d 1086, 1090 (citations omitted). In his brief, Timothy fails to explain how the various evidence

he cites directly shows or permits the inference that the existence of these elements is highly probable, instead relying on the assertion that this should be "obvious". Furthermore, in terms of the evidence cited that would potentially support a claim of fraud, any alleged statements made by Cleo that tend to show a disinclination on her part to effectuate the challenged property transfer are inadmissible insofar as they are hearsay, and may not be relied upon by the Plaintiff in support of his motion.[4] While the remaining evidence upon which the Plaintiff would presumably rely could perhaps permit an inference that the requisite elements were present, that is not enough to satisfy the "highly probable" standard on summary judgment on a claim of fraud. Lastly, Timothy presents no evidence at all that would suggest that any of the elements of fraud are met with regard to him in his individual capacity.

In evaluating the undue influence claims, as noted by the Defendant, the Court must determine whether a confidential relationship existed between the parties to the subject property transfer. *See Estate of Sylvester*, 2001 ME 48, ¶ 6, 767 A.2d at 299. The Law Court has explained that the existence of a close familial relationship is probative of this issue, as well as evidence of one parties' diminished physical or emotional capacity. *See id*, 767 A.2d at 299-300; *Stewart v. Machias Savings Bank*, 2000 ME 207, ¶ 11, 762 A.2d 44, 46. There is no dispute that a blood relationship indeed exists between Wendy, Rebecca, and Cleo. Moreover, the record reveals undisputed evidence to the effect that Cleo was elderly and had some difficulty communicating at the time of executing the powers of attorney and deed. Additionally, the very execution of the powers of attorney reveals a certain degree of trust and confidence held by Cleo in Wendy and Rebecca. These facts indicate that Cleo stood in a position of inherent weakness in her relationship with her daughter and granddaughter. Therefore, in that

---

[4] The court is mindful of the intricacies of M.R. Evid. 803(3).

Cleo transferred a property interest to Rebecca for no consideration, the record contains sufficient facts that, if believed, support the allegation that said transfer was the product of undue influence.

On the other hand, there is no evidence in the record that displays a relationship of trust and confidence between Gilman and his ex-mother-in-law. On a more fundamental level, however, even if the record did reveal the existence of a confidential relationship, an undue influence action cannot be sustained against Gilman under the present circumstances. As the Law Court tells us, "[a] common law undue influence action seeks to avoid or impose a constructive trust on a transfer that was the product of undue influence". *Estate of Sylvester*, 2001 ME 48, ¶ 6, 767 A.2d at 299. In this case, the undisputed facts reveal that Rebecca is the only defendant who is also a transferee of title vis-à-vis Cleo. Since Timothy neither alleges nor provides evidence indicating that Gilman wrongfully holds title to any of Cleo or Timothy's property, claims of undue influence are misplaced as they pertain to this particular Defendant, and must be dismissed.

On the issue of conversion, the Plaintiff admits in his brief that Gilman himself did not convert money, jewelry, or the lawn tractor, but again relies upon the law of civil conspiracy in an effort to hold the Defendant vicariously liable for these alleged acts. As made clear by the Law Court, however, a finding of vicarious liability in this manner requires that the Plaintiff prove the actual commission of some independently recognized tort. *See Potter, Prescott, Jamieson & Nelson, P.A. v. Campbell*, 1998 ME 70, ¶ 8, 708 A.2d 283, 286. Therefore, in this instance, for the Plaintiff to make out his *prima facie* case against Gilman, he must set forth evidence tending to prove the elements of conversion as well as evidence supporting the alleged civil conspiracy. While Gilman's alleged wrongful notarizations are sufficient to raise an inference of conspiracy, it seems

that at most he was involved only with respect to the real estate transfer and the attempt to obtain the certificate of deposit. The record permits no reasonable inference to the effect that Gilman conspired to deprive Cleo of her jewelry or the lawn tractor. Given that the tort of conversion, by its very nature, deals with personal and not real property, the Court is left to consider only the certificate of deposit.

Based on the Plaintiffs brief and supporting submissions, it is clear that, as a matter of law, no claim for conversion can be maintained against Gilman. The tort of conversion requires the substantial or total appropriation of the plaintiff's property interest. *See* Simmons, Zillman & Gregory, *Maine Tort Law* § 6.05 at 6-11 (2001 ed.). Conversely, "[i]nsubstantial interference or intermeddling, even if wrongful, is not the same as conversion". *Id.* In his opposition, Timothy has failed to show interference with his or his mother's right to the certificate of deposit that rises to the level necessary to prove conversion. Indeed, he tacitly admits this in his brief as well as the complaint, making several references to Wendy's "attempted conversion" of the account. Having failed to establish a *prima facie* case against the Defendant, the claims of conversion raised against Gilman, with respect to both Timothy and Cleo, must be dismissed.

**Third Amended Complaint – Count II.**

Count II of the complaint alleges that Gilman and his Co-Defendants breached fiduciary duties owed to Timothy individually and in his representative capacity for Cleo. As outlined by the Law Court, a "fiduciary relationship" is synonymous with a "confidential relationship", as that term is discussed in *Estate of Sylvester*. Indeed, these two concepts are dependent on the presence of the same two factors, namely (1) the actual placing of trust and confidence in fact by one party in another, and (2) a great disparity of position and influence between the parties at issue. *Cf. Estate of Sylvester*, 2002 ME 48, ¶ 6, 767 A.2d 297, 299; *Bryan R. v. Watchtower Bible and Tract Society of New*

*York*, 1999 ME 144, ¶ 19, 738 A.2d 839, 846. In describing the nature of a fiduciary duty, the Law Court has also explained, "[a] fiduciary's acts are evaluated with a strict eye for entire fairness. It is a very high duty to which the fiduciary is held". *Depositors Trust Co. v. Blanchard*, 377 A.2d 101, 103 (Me. 1977).

The analysis provided above in the context of undue influence is equally applicable here, and hence, Timothy has provided adequate evidence in support of fiduciary relationships existing between Cleo and her daughter and Cleo and her granddaughter. Moreover, the property transfer and alleged passbook intermeddling also raise the inference that this duty was breached, and Gilman's alleged deficient notarizations permit the inference that he was complicit in attempting to deprive Cleo of these assets. However, there is no evidence in the record that exhibits the elements of a fiduciary relationship between Timothy and any of the Defendants. Therefore, this count survives summary judgment with respect to Cleo, but must be dismissed with regard to Timothy[5].

**Third Amended Complaint – Count III.**

In count III of the complaint, Timothy asserts a claim, solely in his representative capacity, based on the provisions of 33 M.R.S.A. § 1021 *et seq.*, which serve as a vehicle for elderly dependent persons to avoid improvident transfers of title. In light of the statutory language, Gilman asserts that he is an improper party to this count. In particular, the Defendant notes that the statute applies to transferees with whom an elderly dependent person has a confidential or fiduciary relationship. *See* 33 M.R.S.A. § 1022(1) (2004). Since he was not a party to the transaction that Timothy seeks to have

---

[5] Individuals may seek monetary or other damages for breach of fiduciary duty, whereas a common law undue influence claim, as discussed *supra*, seeks merely to restore title. Hence, while it is proper to dismiss the undue influence claim as it pertains to Gilman, the breach of fiduciary duty claim should not be dismissed. *See, e.g., Shostak v. Shostak*, 2004 ME 75, 851 A.2d 515.

undone, and because the statute does not provide a means of obtaining other damages, Gilman believes that this count cannot apply to him, and must therefore be dismissed.

In his opposition brief, although he provides very little in the way of specifics, it appears again that the Plaintiff is relying on the same allegations of a conspiracy to tie Gilman to this cause of action.

As alluded to by the Defendant, the applicable statutory language scrutinizes transfers of property from an elderly dependent person to another with whom the elderly dependent person has a fiduciary or confidential relationship. *See id.* Moreover, in describing the relief available, the text of the statute merely permits the aggrieved party to avoid transactions that are the product of undue influence. *See* 33 M.R.S.A. § 1023(2) (2004). Given these aspects of the law, it is clear that since Gilman was not a party to the challenged transfer, he can provide the Plaintiff with no relief, regardless of his alleged role in effectuating it. In this case, it is undisputed that Rebecca is the only Defendant to whom the deed transfers a property interest. Therefore, Gilman is an improper party to this count.

**Third Amended Complaint – Count IV.**

In count IV of the complaint, Timothy seeks damages, solely in his individual capacity, for wrongful interference with his expected legacy and contractual relations. Gilman seeks summary judgment on this count, as does the Plaintiff, who seeks an entry of summary judgment against all three Defendants[6].

The Plaintiff argues that the Defendants, by inducing Cleo to convey her home and mobile home park to Rebecca and herself as joint tenants, have wrongfully interfered with a bequest he expected to receive under Cleo's will. In support of his

---

[6] With respect to this count, Timothy has framed his motion as a motion for partial summary judgment as to the issue of liability alone, pursuant to M.R. Civ. P. 56(c).

position, Timothy contends that Rebecca was responsible for the drafting of the subject deed, that she took advantage of her mother's emotional and physical infirmity in obtaining her signature thereon, and that her Co-Defendants were complicit in obtaining this result.

In opposition, the Defendants assert that the factual circumstances underpinning the deed's execution are disputed, and therefore the occurrence of any undue influence cannot be resolved on summary judgment. With regard to Gilman's motion, he contends separately that the Plaintiff lacks any proof that he wrongfully interfered in any way with the Plaintiff's expectancies under Cleo's will.

As adopted by the Law Court, individuals may indeed be subject to liability for acts of tortious interference with an expected legacy or gift under a will. *See Plimpton v. Gerrard, et al.*, 668 A.2d 882, 885 (Me. 1995). Acts that cause a testator to convey property inter vivos that would have otherwise passed under a will fall within the ambit of this cause of action. *See id*. Moreover, the commission of such acts subjects defendants to liability for damages as well as the imposition of a constructive trust forcing the re-conveyance of the wrongfully obtained property. *See id*. The elements of this tort are these: (1) the existence of an expectancy of inheritance; (2) an intentional interference by a defendant through tortious conduct, such as fraud, duress, or undue influence; (3) a reasonable certainty that the expectancy of inheritance would have been realized but for the defendant's interference; and (4) damage resulting from that interference[7]. *See Morrill v. Morrill*, 1998 ME 133, ¶ 7, 712 A.2d 1039, 1041-1042.

---

[7] In other cases addressing tortious interference of an economic nature, the Law Court has explained that the element of fraud in such a cause of action, as distinct from the independently recognized tort of fraud, need be proven merely by a preponderance of the evidence and not by clear and convincing evidence. *See, e.g., Petit v. Key Bank of Maine*, 688 A.2d 427, 432-433 (Me. 1996). The logical extension of this idea is that the "intentional interference" element of the present cause of action also need only be proven by a mere preponderance of the evidence. *Cf. In re Estate of Horne*, 2003 ME 73, ¶ 18, 822 A.2d 1177, 1182.

It appears that the Plaintiff has sufficiently stated his *prima facie* facts with regard to count IV of the complaint. The will purportedly executed by Cleo indicates that Timothy had a clear expectancy of inheriting the house and mobile home park, and thus, the execution of the deed obstructs this result. Additionally, the Plaintiff has set forth facts that raise a reasonable inference that the procurement of the deed was wrongful insofar as it was not the product of Cleo's own free will. Moreover, Wendy's witnessing and Gilman's notarizing the instrument of transfer, and their respective relationships with Rebecca and Cleo, also permit the inference of complicity the alleged interference. On the other hand, however, the Defendants have offered a conflicting version of the truth as to Cleo's desire to execute the deed, thus refuting the claim that any interference with the Plaintiff's expectancy was tortious. Therefore, there exist genuine issues of material fact that preclude summary judgment on this count in favor of any of the parties.

**Third Amended Complaint – Count V.**

In count V of his complaint, the Plaintiff asserts a cause of action for the alleged tortious spoliation of evidence. Our Law Court has never recognized this cause of action and the Court declines the Plaintiff's invitation to do so now.

**Defendants' Counterclaim.**

Similar to count IV of the Plaintiff's complaint, the Defendants' counterclaim asserts a cause of action for wrongful interference with an expected legacy. Among the allegations set forth in the counterclaim are that Timothy wrongfully obtained his mother's signature on her will of June 2000, and that he has misappropriated and withdrawn funds from her bank accounts without accounting for them. In their opposition to Timothy's motion, however, they concede that Wendy and Gilman had no

expectation of receiving a bequest from Cleo, and thus, the counterclaim should be dismissed as it pertains to those two Defendants.

In his brief, Timothy asserts that Rebecca has no evidence to support her claim. The Plaintiff points out that she and the other Defendants previously denied having knowledge of any statements or actions on his part that would support their claim that he did anything wrongful with regard to his mother's assets, or their expectancies. Additionally, he contends that the accounts at issue were and are joint accounts, and as a joint owner, he had the right to withdraw funds. Timothy also maintains that these accounts were not fiduciary or trust accounts.

In opposition, Rebecca contends that Timothy wrongfully converted funds in violation of his fiduciary duty to his mother, as well as her ownership rights as established by 18-A M.R.S.A. § 6-103. She further contends that the loss of these funds jeopardizes her ability to receive the specific bequest made to her in her mother's will. Rebecca also criticizes any suggestion that 18-A M.R.S.A. § 6-102 & 6-108 authorize Timothy's withdrawals, since those provision are intended solely for the protection of financial institutions.

In reply, Timothy again reiterates that he was a joint owner, along with Cleo, of the accounts at issue, and that his withdrawals from those accounts were proper in light of provisions of the Probate Code dealing with multiple-party accounts. *See* 18-A M.R.S.A. § 6-101 *et seq.* He also particularly notes that pursuant to section 6-104(a), amounts remaining on deposit in a joint account after the death of one party belong to the survivor absent clear and convincing evidence of a contrary intent at the time the account was created. *See* 18-A M.R.S.A. § 6-104(a). Since, in his view, Rebecca fails to set forth clear and convincing evidence to this effect, the accounts will not be part of

Cleo's estate upon her death, and thus, Rebecca can have no expectation of a legacy derived from these sources.

The Plaintiff's motion must be granted as to Wendy and Gilman, and denied as to Rebecca. Insofar as Wendy and Gilman admit that they had no expectation of receiving a legacy from Cleo, they cannot satisfy one of the elements necessary to succeed on the counterclaim. On the other hand, viewing the facts and inferences derived therefrom most favorably to Rebecca, it seems that she has adequately stated her claim. First, the parties agree that Cleo's will provides Rebecca with a potential monetary bequest, thus giving rise to a clear expectancy of inheritance. In addition, the record evidence indicates that Timothy withdrew substantial funds from one of these joint accounts, used the money to invest in his own limited liability company, subsequently liquidated this investment, then deposited the proceeds in an account controlled by him and his wife. It is true that at death, absent a contrary intention, joint accounts belong to the surviving party or parties. However, absent a contrary intention, prior to death, such accounts belong to the named holders in proportion to their contributions to sums on deposit. *See* 18-A M.R.S.A. §§ 6-103(a), 6-104(a) (2004). Here, there is no indication that Cleo intended for Timothy to own the monies in these accounts outright during her life. Moreover, the Plaintiffs alleged acts increase the likelihood that Cleo's estate may be diminished such that bequests contemplated in her will cannot be realized, such as the monetary bequest to Rebecca.

For the foregoing reasons, the entry will be:

Defendant Gilman's Motion for Summary Judgment on count I of Plaintiff's Third Amended Complaint is GRANTED; judgment for Defendant Gilman on count I of Plaintiff's Third Amended Complaint; Defendant Gilman's Motion for Summary Judgment on count II of Plaintiff's Third Amended Complaint is GRANTED as to a claim brought by the Plaintiff in his individual capacity but DENIED as to claims

brought by Plaintiff in his representative capacity;[8] judgment for Defendant Gilman on count II of Plaintiff's Third Amended Complaint as to claim of Plaintiff H. Timothy Breen, individually; Defendant Gilman's Motion for Summary Judgment on count III of Plaintiff's Third Amended Complaint is GRANTED; judgment for Defendant Gilman on count III of Plaintiff's Third Amended Complaint; Defendant Gilman's Motion for Summary Judgment on count V of Plaintiff's Third Amended Complaint is GRANTED; judgment for Defendant Gilman on count V of Plaintiff's Third Amended .Complaint; Defendant Gilman's Motion for Summary Judgment on Count IV of the Third Amended Complaint is DENIED; Plaintiff's Cross-Motion for Summary Judgment on count IV of his Third Amended Complaint as to Defendant Gilman is DENIED; Plaintiff's Motion for Summary Judgment on Defendant's Counterclaim is GRANTED as to claims by Defendant Gilman and Defendant Wendy Lewis but DENIED as to the claim raised by Defendant Rebecca Lucas; judgment for Plaintiff on Defendant Gilman and Defendant Wendy Lewis's counterclaim.

Dated: July___4___, 2005

Donald H. Marden
Justice, Superior Court

---

[8] Plaintiff's representation capacity is in question from report of guardian-ad-litem but the claim remains.

H TIMOTHY BREEN   - PLAINTIFF & OBO


Attorney for: H TIMOTHY BREEN


SHIRO & SHIRO LAW OFFICES
86 SILVER STREET
PO BOX 706
WATERVILLE ME 04903-0706


CLEO BREEN   - PLAINTIFF


Attorney for: CLEO BREEN


SHIRO & SHIRO LAW OFFICES
86 SILVER STREET
PO BOX 706
WATERVILLE ME 04903-0706


Attorney for: CLEO BREEN


HAINKE & TASH
PO BOX 192
WHITEFIELD ME 04353



vs
REBECCA LUCAS   - DEFENDANT
307 ROUTE 41
WINTHROP ME 04364
Attorney for: REBECCA LUCAS
JULIAN SWEET   - RETAINED
BERMAN & SIMMONS
PO BOX 961
129 LISBON STREET
LEWISTON ME 04243-0961


WENDY LEWIS   - DEFENDANT
185 SMITHFIELD RD
OAKLAND ME 04963
Attorney for: WENDY LEWIS
JULIAN SWEET   - RETAINED
BERMAN & SIMMONS
PO BOX 961
129 LISBON STREET
LEWISTON ME 04243-0961


LAWRENCE GILMAN   - DEFENDANT
74 POPPY LANE
SIDNEY ME 04330
Attorney for: LAWRENCE GILMAN
JULIAN SWEET   - RETAINED
BERMAN & SIMMONS
PO BOX 961
129 LISBON STREET
LEWISTON ME 04243-0961

SUPERIOR COURT
KENNEBEC, ss.
Docket No   AUGSC-RE-2003-00019


**DOCKET RECORD**